

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/17/2011

| | | |
|---|---|---|
| IN RE: | § | |
| **DUKE INVESTMENTS, LTD.,** | § | **CASE NO: 10-36556** |
| Debtor. | § | |
| | § | **CHAPTER 11** |
| | § | |
| **DUKE INVESTMENTS, LTD. and** | § | |
| **MARK L. DUKE,** | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 10-03577** |
| | § | |
| **AMEGY BANK, N.A.** | § | |
| Defendant. | § | |

**MEMORANDUM OPINION ON PLAINTIFFS' AMENDED EMERGENCY MOTION**
**TO DISQUALIFY KENNETH STOHNER, JR. AND JACKSON WALKER, LLP**
[Adv. Docket No. 56]

**I. INTRODUCTION**

The Court writes this Memorandum Opinion because it underscores the problems that can arise when an attorney signs a proof of claim on behalf of the client.

Duke Investments, Ltd. and Mark Duke (the Plaintiffs) filed a motion requesting this Court to disqualify both the Jackson Walker law firm (Jackson Walker) and Kenneth Stohner (Stohner), a partner at Jackson Walker, from representing Amegy Bank, N.A., defendant in this adversary proceeding (the Defendant or Amegy). [Adv. Docket No. 56].  According to the Plaintiffs, Stohner "will likely be a material witness" because he prepared, signed, and filed the proof of claim.  Therefore, the Plaintiffs argue that Stohner should be disqualified from serving as Amegy's counsel of record at the July 19, 2011 trial.  Hearings on Amegy's motion took place on April 28, 2011, and June 2, 2011.

The Court now makes findings of fact and conclusions of law pursuant to Federal

1

Bankruptcy Rule 7052.  To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion of law is construed as a finding of fact, it is also adopted as such.   This Court reserves the right to make additional findings and conclusions as it deems appropriate or as any party may request.

**II. FINDINGS OF FACT**

**A.  Background of Relevant Facts in the Main Case**

1.   The Plaintiff-Debtor, Duke Investments, Ltd. (the Debtor), filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on August 2, 2010 (the Petition Date). [Main Case No. 10-36556, Docket No. 1].  Mark Duke is the principal of the Debtor.

2.   On January 5, 2011, Amegy filed a proof of claim against the Debtor in the amount of $5,259,958.43. [Main Case No. 10-36556, Claims Register, Claim No. 1].  The proof of claim was signed and filed by Stohner.

**B.  Calculation of the Proof of Claim Figures**

3.   In preparation for filing the proof of claim, Stohner contacted David Helffrich (Helffrich), assistant vice president of Amegy, to obtain the total amount owed by the Debtor as of the Petition Date.  Stohner asked Helffrich to revise Exhibit K-32 (Exhibit K-32 or K-32) to reflect the amounts outstanding as of August 2, 2010, instead of September 30, 2010.[1]

4.   Exhibit K-32 is a spreadsheet prepared by Helffrich and used internally by Amegy in preparation for A. Stephen Kennedy's (Kennedy) deposition on October 8, 2010.

---

[1] In the Findings of Fact, if there is no reference to a docket number, then the finding is based upon the credible testimony adduced at the hearings on Amegy's motion to disqualify or the exhibits introduced during the hearings.

Kennedy is an executive vice president and the manager of the "Energy Group" at Amegy.

5.  It was later realized that K-32 contained two errors: (1) the referenced date under non-default interest was September 14, 2010, but the interest was calculated through September 30; and (2) the total non-default interest for February 2010 was calculated based on 31 days instead of 28 days.  The testimony is conflicting as to who—either Amegy's employees or Stohner—discovered that K-32 contained these errors.

6.  Helffrich corrected the errors in K-32 before calculating the total amount due as of the Petition Date.  This corrected amount is set forth in the proof of claim.

7.  Helffrich obtained the following information from the Amegy database (which is set forth in the proof of claim): (1) the total principal due; (2) the total hedge settlement expense; and (3) the total engineering expense.  Moreover, Helffrich calculated accrued interest by using the non-default interest rate of 6%, as provided for in the original loan documents. However, during the time that the loan was in default, Helffrich calculated interest by using the default rate of interest. The default rate of interest is 17%—representing the non-default rate of 6% plus the additional amount of 11% that takes effect when the loan is in default.  *See infra* Part D.

8.  Helffrich testified that an internal loan committee at Amegy Bank, along with Amegy's legal counsel, determined that the interest rate increase upon default was 11% (which, as noted above, meant that the effective default interest rate became 17%).[2]

---

[2] At the hearings, Stohner, Helffrich, and Kennedy gave testimony as to who decided that an 11% increase in the interest rate should be used in order to calculate accrued interest when the loan went into default.  *See infra* Part D. However, both Helffrich and Kennedy stated that the 11% interest rate increase was decided prior to Helffrich authoring K-32. Kennedy testified that a "Credit Transition Committee" at Amegy was partially responsible for the

9.  The total amount of attorneys' fees listed in the proof of claim is $447,759.93. Stohner testified that he obtained a billing and payment history from the billing department of Jackson Walker and calculated the total legal fees as of the Petition Date at $444,759.93, which he then provided to Helffrich.   The $2,861.94 in attorneys' fees billed by the law firm of Harris, Finley, and Bogle were also added to the Jackson Walker fees.  This was the figure included in the final proof of claim setting forth the total amount of attorneys' fees.

10. On January 4, 2011, Stohner sent an email to Helffrich, Kennedy, Howard Schramm (a "shadow officer" in the Special Assets Department at Amegy),[3] Allan Port (general counsel for Amegy), and Gordon Shapiro (an attorney at Jackson Walker) with a draft copy of the proof of claim.  Stohner asked these individuals to "[p]lease advise of any questions or comments" regarding the proof of claim.

11. Helffrich replied that the "numbers look correct" and he had "no comments."  Allan Port replied as to paragraph twelve of the proof of claim: "[A]ren't they [the Debtor] claiming a set-off or counterclaim?"  Stohner thereafter removed paragraph twelve in the final version of the proof of claim.

12. Stohner testified that no one else replied to his email with changes or comments regarding the draft of the proof of claim.

---

decision.  Based upon the testimony, this Court finds that Stohner did not make the ultimate decision regarding the default interest rate to be used.

[3] A "shadow officer" is a bank officer who serves as a back-up for the primary officer on the loans should the primary officer ever leave the bank.  Helffrich stated that Schramm served as a shadow officer for the loan accounts that were in bankruptcy.

**C. Background of the Litigation between the Plaintiffs and Amegy**

13. On May 12, 2010, the Debtor filed suit against Amegy in the 129th Judicial District Court for Harris County, Texas. On April 1, 2010, Amegy filed suit against the Debtor in the 191st Judicial District Court for Dallas County, Texas. On October 29, 2010, Amegy removed the two proceedings to this Court (Adversary Proceeding Nos. 10-3549 and 10-3548, respectively). On November 9, 2010, the Debtor initiated a separate adversary proceeding in this Court against Amegy.

14. On December 3, 2010, this Court consolidated all of the adversary proceedings in adversary number 10-03577 (collectively, the Adversary Proceeding). In the Adversary Proceeding, the Plaintiffs dispute the amount listed on Amegy's proof of claim and allege, among other things, that Amegy wrongfully charged the Debtor fees, expenses, and an exorbitant default interest rate. A trial will be held on July 19, 2011, in this Court to determine, among other issues, the allowed amount of Amegy's claim in the Debtor's Chapter 11 case.

15. Following the Petition Date, this Court approved John A. Lee (Lee) and his law firm, Christian, Smith, & Jewell, LLP (CSJ), as special counsel authorized to represent the Debtor in the Adversary Proceeding. Lee and CSJ were also representing Mark Duke.

16. On February 8, 2011, Amegy filed a Motion to Compel Production of Documents and Interrogatory Responses (the Motion to Compel). [Adv. Docket No. 26].

17. On February 24, 2011, this Court held a hearing on the Motion to Compel. The Court took the Motion to Compel under advisement.

18. On March 4, 2011, this Court issued an order granting the Motion to Compel. [Adv. Docket 33]. Aside from requiring documents to be produced, this Court also ordered the Debtor and Lee to pay Amegy's reasonable attorneys' fees and costs incurred in the preparation and prosecution of the Motion to Compel.

19. On March 17, 2011, the Debtor, unhappy with Lee and CSJ, signed off on a motion to allow Lee and CSJ to withdraw as counsel. [Adv. Docket No. 38].

20. On April 5, 2011, this Court signed an order approving Walker & Patterson, P.C. as the new special counsel to prosecute the Plaintiffs' claims in the Adversary Proceedings. Accordingly, Johnie Patterson (Patterson) became counsel of record for the Plaintiffs.

21. On April 25, 2011, the Plaintiffs filed an Amended Emergency Motion to Disqualify Kenneth Stohner, Jr. and Jackson Walker, LLP (the Motion). [Adv. Docket No. 56]. The Motion requests this Court to disqualify both Stohner and Jackson Walker from further representation of Amegy in the Adversary Proceeding.

**D.  Hearings on the Motion to Disqualify**

22. The Court held two hearings regarding the Motion, one on April 28, 2011, and the second on June 2, 2011 (the Hearings).

23. The Plaintiffs allege in the Motion that because Stohner signed the proof of claim, Stohner will "likely be a material fact witness" at the trial to be held on July 19, 2011.

24. Stohner testified that out of the hundreds of documents that were produced for preparing the proof of claim, he reviewed "some" of the documents.

25. At the April hearing, Stohner testified that he filed the proof of claim "based on the information I had reviewed, and also the discussions with the client, the

6

facts I've already alluded to, and in conjunction with that, and in conjunction with the client, made the determination that these were the amount due, and I signed the claim. So, if by signing the claim, that makes the final decision [with respect to when default interest should begin to accrue], then that would be true."

26. Stohner also testified that: (1) he discussed the preparation of the proof of claim, including when the default interest rate should accrue, with Kennedy and Helffrich prior to filing the proof of claim on January 5, 2011; and (2) he did not make the ultimate decision regarding when the default interest rate should accrue, but instead, prepared the proof of claim "in conjunction with the client."

27. At the June hearing, Kennedy testified that even if Stohner was deemed to be a material witness or subsequently gave adverse testimony, Amegy would consent to continued representation by Stohner and Jackson Walker. Kennedy testified that it would work an "undue burden and prejudice" on Amegy if Stohner and Jackson Walker were not able to continue representation of Amegy.

28. The Plaintiffs never alleged, in either the Motion or during the Hearings, that allowing Stohner to testify would actually harm or prejudice the Plaintiffs in any way.

29. Patterson, in his closing arguments, stated that "the evidence is clear that Stohner both signed and filed the proof of claim, and that in and of itself makes him a material fact witness … and his testimony is clearly material. Stohner is 'pretty much it' when it comes to the proof of claim."

### III. CREDIBILITY OF WITNESSES

At the Hearings on April 28, 2011, and June 2, 2011, this Court heard testimony from three witnesses, including: (1) Kenneth Stohner, Jr.; (2) David Helffrich; and (3) A. Stephen

Kennedy.  After listening to the testimony, the Court makes the following observations regarding the credibility of the witnesses, as set forth below.

## A.  Kenneth Stohner, Jr.

Stohner testified that he prepared, signed, and filed the proof of claim on behalf of Amegy. Patterson questioned Stohner extensively about his knowledge of the calculations contained in the proof of claim, including whether Stohner made the final decision regarding what default interest rate to use and when default interest should accrue.  Stohner consistently testified that he prepared the proof of claim based on calculations and information—including the information contained in K-32—provided to him by officers at Amegy.  Stohner's testimony that he prepared the proof of claim "in conjunction" with Amegy officers is corroborated by the emails sent by Stohner requesting Amegy officers to update calculations and provide comments or questions prior to his filing the proof of claim. This Court finds that Stohner's testimony relating to his involvement in calculations relating to the proof of claim is consistent and credible. Further, this Court finds that Stohner's testimony on all other issues is credible.  The Court gives substantial weight to Stohner's testimony.

## B.  David Helffrich

In evaluating the credibility of Helffrich's testimony, this Court finds that Helffrich's nervousness inhibited the delivery of his testimony.  While the Court finds that the substance of Helffrich's testimony was mostly credible, his apparent inattention to detail and his inability to recall specific conversations was, at times, disconcerting.  Helffrich testified that he calculated all of the figures for the proof of claim, except for the attorneys' fees; his email on January 4, 2011, to Stohner with the proof of claim figures attached supports his testimony.  He also testified that although he used the K-32 form in preparing the calculations for the proof of claim,

he corrected the errors in K-32 prior to calculating the figures for the proof of claim.  Helffrich, however, was unable to recall many of the details regarding the figures and calculations for K-32 and the proof of claim.  For example, he was not sure who told him to increase the interest rate by 11% when the loan went into default, even though he was certain that "discussions took place" among an internal loan committee at Amegy and legal counsel concerning the interest rate.  Likewise, Helffrich was certain that he discovered the errors in K-32, but he could not recall whom he informed about those errors.  Despite these discrepancies, this Court finds that Helffrich's testimony is, for the most part, credible regarding the issues essential to this particular dispute at bar. The Court definitely gives some weight to his testimony.

**C.  A. Stephen Kennedy**

Kennedy testified that he was not involved in the calculation of the proof of claim figures, nor was he involved in deciding that an increase of 11% should be used in determining the default interest rate.  Although Kennedy did have familiarity with the Debtor's loan—he testified to the total amount due on the Debtor's loan in his deposition in October 2010—Kennedy did not make material decisions regarding the proof of claim. Overall, Kennedy's testimony, to a certain degree, corroborated the testimony of Stohner and Helffrich.  The Court finds Kennedy's testimony to be credible and gives substantial weight to his testimony insofar as it corroborates the testimony of Stohner and Helffrich.

## IV. CONCLUSIONS OF LAW

**A.  Jurisdiction and Venue**

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This particular lawsuit is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See*

*Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)* Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "[a]dversary [p]roceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").  Venue is proper pursuant to 28 U.S.C. § 1409.

**B.  Deciding Whether to Grant Motion to Disqualify an Attorney**

In the Fifth Circuit, district courts initially look to the district's local rules when considering motions to disqualify.  *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995).  In the Southern District of Texas, the local rules provide that the Texas Disciplinary Rules of Professional Conduct (the Texas Rules or Texas Rule) shall be the "minimum standard of practice."  *Kennedy v. Mindprint* (*In re ProEducation Int'l, Inc.*), 587 F.3d 296, 299 (5th Cir. 2009) (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)).  The Texas Rules, however, "are not the sole authority governing a motion to disqualify" in federal cases.  *Id.* at 299 (quoting *In re Am. Airlines, Inc.*, 972 F.2d at 610).  "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law."  *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).  Because the Fifth Circuit recognizes the American Bar Association Model Rules of Professional Conduct (the Model Rules or Model Rule) as the national standard, this Court will apply both the Model Rules and the Texas Rules in the following analysis.  *In re ProEducation Int'l, Inc.,* 587 F.3d at 299.

10

1.  <u>Definition of Necessary Witness</u>

        i.  *Model Rule 3.7(a)*

Model Rule 3.7(a) provides that "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ."  Model Rule 3.7(a).  When an attorney's testimony is merely cumulative or capable of being corroborated by other witnesses, the attorney is not "likely to be a necessary witness" under Model Rule 3.7(a).  *See United States v. Starnes*, 157 F. App'x 687, 694 (5th Cir. 2005) (holding that the lead prosecutor was not a necessary witness because the prosecutor did not observe anything that was not observed by another agent); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001) (holding that the attorney was not a necessary witness because all information was available from other sources); *Landmark Graphics Corp. v. Seismic Micro Tech., Inc.*, Nos. H-05-2618, H-06-1790, 2007 WL 735007, at *5 (S.D. Tex. Jan. 31, 2007) (explaining that while the attorney had knowledge about certain aspects of the plaintiff's allegations, the attorney was not a necessary witness because the record failed to reveal what the attorney knew "in comparison to other witnesses").

The movant "bears the burden of proving that disqualification is warranted."  *Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*, Ns: 6:06 CV 549, 2007 WL 4376104, at *5 (E.D. Tex. Dec. 13, 2007) (citing *In re Am. Airlines, Inc.*, 972 F.2d at 614).  Unlike the attorney in *U.S. Fire Ins. Co.*, who was considered a necessary witness because he discovered facts relating to a potential loss, Stohner prepared the proof of claim in conjunction with other officers at Amegy, using a summary of calculations prepared by Helffrich.  [Finding of Fact Nos. 3, 25, & 26].  Because Stohner prepared the proof of claim in conjunction with officers at Amegy, Stohner's testimony is not the sole source of information regarding the proof of claim.  Therefore, Stohner is not a "necessary witness" as defined by Model Rule 3.7(a).

ii. *Texas Rule 3.08(a)*

Disqualification under Texas Rule 3.08(a) is required if the testimony is "necessary to establish an essential fact on behalf of the lawyer's client."  Nevertheless, "rule 3.08 should rarely be the basis for disqualification." *In re Bivins*, 162 S.W.3d 415, 421 (Tex. App.—Waco 2005, no pet.) (per curiam) (quoting *In re Chu*, 134 S.W.3d 459, 464 (Tex. App.—Waco 2004, no pet.)).

Under Model Rule 3.08(a), a movant has the burden of showing that the attorney's testimony is "necessary to establish an essential fact on behalf of the [non-movant attorney's] client," and the movant must explain why "other sources revealed in the record," such as the testimony of other witnesses or other pertinent records in evidence, are insufficient.  Model Rule 3.08(a); *see also In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (holding that the movant failed to establish that an attorney's testimony was necessary to establish details in the husband's employment schedule when the information was reflected in the record); *In re Sandoval*, 308 S.W.3d 31, 34 (Tex. App.—San Antonio 2009, no pet.) (orig. proceeding) (explaining that because there were multiple witnesses at the signing of the agreement, the attorney's testimony was not necessary to establish the essential fact).   In deciding whether disqualification is necessary, a court should look determine whether other witnesses are available to testify to the information or whether the attorney is the sole source of information.  *Warrilow v. Norrell*, 791 S.W.2d 515, 523 (Tex. App.—Corpus Christi 1989, writ denied).  Moreover, the necessity of the attorney's testimony requires that the movant indicate an "unqualified intent" to have the attorney testify.  *See Spears v. Fourth Ct. App.* 797 S.W.2d 654, 658 (Tex. 1990).  A movant must "affirmatively and unequivocally" state his intention to call the attorney as a witness, as it is not enough for opposing counsel to merely assert that the testifying attorney *might* be called as

a witness or allege that the attorney is a "necessary witness." *In re Slusser*, 136 S.W.3d 245, 248 (Tex. App.—San Antonio 2004, no pet.).

Although Patterson failed to expressly state that he intends to call Patterson, in his closing arguments, he stated that "the evidence is clear that Stohner both signed and filed the proof of claim, and that in and of itself makes him a material fact witness … and his testimony is clearly material.  Stohner is 'pretty much it' when it comes to the proof of claim."  [Finding of Fact No. 29].  The Court construes Patterson's words to mean that he definitely intends to call Stohner as a witness. Accordingly, the Court concludes that the Plaintiffs have satisfied one of the two requirements of Texas Rule 3.08(a). However, the Plaintiffs have failed to establish the second requirement of Texas Rule 3.08(a).  As discussed previously, Stohner is not the only witness who can testify about the source of information contained in the proof of claim. At a minimum, Helffrich can give such testimony. For this reason, Stohner is not a "necessary witness" under Texas Rule 3.08(a).[4]

iii.  *Stohner is not a Necessary Witness under the Model Rule or the Texas Rule*

In this suit, the Plaintiffs have failed to carry the burden of establishing that Stohner is a necessary witness because the Plaintiffs have failed to explain why the testimony of Helffrich or the testimony of members of Amegy's "Credit Transition Committee"[5] would be insufficient to establish: (1) the validity of the calculations in the proof of claim; (2) who made the ultimate decision to increase the interest rate by 11% when the loan went into default; and (3) when the default rate should accrue.  Stohner's testimony may reveal the nature of his discussions with

---

[4] To the extent that the Plaintiffs are arguing that Stohner is a "necessary witness" regarding the attorneys' fees component of the proof of claim, their argument, at first blush, appears correct because only Stohner compiled these figures. [Finding of Fact No. 9].  However, this is not a basis for granting the Motion. Even if an attorney is likely to be a necessary witness, disqualification is not required if "the testimony relates to the nature and value of legal services rendered in the case." Model Rule 3.7(a)(2); Texas Rule. 3.08(a)(3).

[5] "Credit Transition Committee" is specific terminology used by Amegy officers at the Hearings.

Amegy officers regarding Stohner's understanding of the calculations contained in the proof of claim or the specific steps Stohner took in preparing the proof of claim.  However, the Plaintiffs failed to establish that Stohner possesses knowledge or information incapable of being corroborated by testimony from officers at Amegy who decided upon the 11% increase in the interest rate.  While Stohner prepared, signed, and filed the proof of claim [Finding of Fact No. 2], this Court declines to accept the Plaintiffs' argument that Stohner's preparation of the proof of claim automatically places him in the "necessary witness" category.

Before this Court can disqualify Stohner, the Plaintiffs have to establish that Stohner possesses **exclusive** knowledge or understanding of the disputed evidence, when compared to other witnesses or evidence in the record.  The Plaintiffs failed to do this.  Indeed, this Court finds that all of the calculations contained in the proof of claim (excluding calculations for attorneys' fee) were determined by officers at Amegy prior to Stohner's preparation of the proof of claim. [Finding of Fact Nos. 9 and 10].  Because the Plaintiffs failed to show that Stohner's testimony would be the **sole** source of information pertaining to the disputed evidence, this Court concludes that Stohner is not a necessary witness under either Model Rule 3.7(a) or Texas Rule 3.08(a).  Therefore, in the first instance, the Court denies the Motion because Stohner is not a necessary witness.

2. Substantially Adverse

Even if Stohner is a necessary party, his testimony is not likely to be substantially adverse to his client, Amegy.  Under Texas Rule 3.08(b), when an attorney must testify and the testimony likely will be "substantially adverse to the [attorney's] client," the attorney shall be disqualified "unless the client consents after full disclosure." Texas Rule 3.08(b).  Under Model Rule 3.08(b), to establish grounds for disqualification, a movant must show that the testimony of the lawyer is:

(1) required; and (2) substantially adverse to the lawyer's client. *In re Hormachea*, No. 04-04-00581-CV, 2004 WL 2597447, at *2 (Tex. App.—San Antonio Nov. 17, 2004, no pet.) (mem. op.) (holding that although an attorney's knowledge of facts "may be material" to the plaintiff's claim, the movant failed to establish that the testimony was required and that it was substantially adverse to the attorney's client). A movant must do more than merely allege that an attorney's testimony will be substantially adverse, for the movant must also show that the testimony will "substantially conflict" with the testimony of the attorney's client. *Chatham Holdings, Inc. v. Resolution Trust Corp.*, No. 3:95-CV-0854-P, 1996 WL 751052, at *4 (N.D. Tex. Dec. 30, 1996). For example, in *U.S. Fire Ins. Co.*, the Fifth Circuit concluded that the lawyer's testimony was substantially adverse to his client because his discovery of the dishonest conduct would potentially void the policy. *Id.* Consequently, the court disqualified the attorney, despite the fact that the attorney's client consented to continued representation by the attorney. *Id.*

In this suit, the Plaintiffs failed to prove that Stohner's testimony would substantially conflict with any testimony given by Helffrich or any other employee of Amegy. Thus, in addition to denying the Motion because the Plaintiffs failed to establish that Stohner is a "necessary witness," this Court also denies the Motion on the grounds that the Plaintiffs failed to prove that Stohner's testimony will be substantially adverse to the testimony of any Amegy employee.

As a further basis for denying the Motion, Amegy contends that even if Stohner's testimony is substantially adverse, Amegy has expressly consented to Stohner remaining as counsel of record for Amegy in this suit. [Finding of Fact No. 29]. If the only rule that this Court had to apply were Texas Rule 3.08(b), this Court would accept Amegy's argument and deny the Motion. Rule 3.08(b) unquestionably provides a client-consent exception to disqualification for

15

substantially adverse testimony.  However, Texas Rule 3.08(b) is not the only rule on which this Court must focus.

The Fifth Circuit has held that trial courts must disregard the client-consent exception normally allowed under Texas Rule 3.08(b) when substantially adverse testimony is to be given. *See U.S. Fire Ins. Co.*, 50 F.3d at 1317.  This holding reflects the Fifth Circuit's view that the likelihood of public suspicion must be given higher priority than a party's choice of counsel, at least when giving consideration to disqualification of a specific attorney, as opposed to the entire law firm. *See In re Dresser Indus.*, *Inc.*, 972 F.2d at 543–46.  Because the Fifth Circuit has held that the client-consent exception does not automatically resolve the Motion to Disqualify in the nonmovant's favor, and because this Court is bound by Fifth Circuit precedent, even though Amegy unequivocally consents to Stohner's continued representation despite possible substantially adverse testimony, any decision by this Court denying the Motion should preferably be made on some other basis.  Here, this Court has already concluded that the Motion should be denied as to Stohner for two separate and independent reasons; this is more than enough.

**C.    Deciding Whether to Disqualify the Jackson Walker Law Firm (as opposed to just Stohner)**

Model Rule 3.7(b) provides that a lawyer may act as an advocate for the client even if "another lawyer in the lawyer's firm is likely to be called as a witness" unless the lawyer would be "precluded from doing so by Rule 1.7 or Rule 1.9."  Model Rule 3.7(b); *see U.S. Fire Ins. Co.*, 50 F.3d at 1312 ("Unless an impermissible conflict of interest exists between a testifying lawyer and her client, Model Rule 3.7 . . . does not mandate the vicarious disqualification of the lawyer's firm.").  Model Rule 1.7 governs an attorney's conflict of interest with current clients, whereas Model Rule 1.9 governs conflicts with former clients. Model Rules 1.7 & 1.9.

Ultimately, it is the lawyer's responsibility to determine "whether a conflict of interest

exists," and it "is primarily an issue to be resolved between lawyer and client."  *Marin v. Gilberg*, No. V-07-62, 2008 WL 2770382, at *3 (S.D. Tex. July 11, 2008).  If a lawyer's testimony may prejudice only his own client, "the opposing party should have no say in whether or not the attorney participates in the litigation as both advocate and witness," and a disqualification motion that alleges only a remote possibility that the attorney and his or her client "may eventually find themselves at odds is much too tenuous a thread to support the burdensome sanction" of disqualifying the entire law firm.  *U.S. Fire Ins. Co.*, 50 F.3d at 1314, 1315, 1316 (explaining that "public faith in the integrity of the legal system is more likely to be undermined than vindicated" if the non-testifying members of the law firm were disqualified). Similarly, under Texas Rule 3.08(c), even if one of the lawyers is disqualified, the disqualification does not extend to the entire firm as long as the attorney provides full disclosure and the client consents.  *Spears*, 797 S.W.2d at 658.

Accordingly, even if Stohner should be disqualified—and this Court holds that he is not—the disqualification should not extend to Jackson Walker.  The Plaintiffs have not actually alleged that Stohner's testimony will cause them prejudice [Finding of Fact No. 28]; hence, it is not up to the Plaintiffs to decide whether Jackson Walker should continue to represent Amegy. Instead, this decision rests with Amegy.  Amegy consented to continued representation by both Stohner and Jackson Walker [Finding of Fact No. 27], and the rules make it clear that with Amegy's consent, the firm may continue to represent Amegy even if Stohner is to serve as a witness.  *See* Model Rule. 3.7 (b) & cmt. 7; Texas Rule R. 3.08(a).  The testimony adduced at the Hearings failed to establish that there is a conflict of interest between Amegy and Jackson Walker.  This Court respects Amegy's choice of counsel and declines to impose the "burdensome sanction" of disqualifying the firm of Jackson Walker.

## V. CONCLUSION

Under the circumstances in this suit, and in light of the Fifth Circuit's holdings on the issue, this Court does not disqualify either Stohner or Jackson Walker. Despite this holding, Stohner—and all other attorneys representing creditors in bankruptcy cases—ought to think twice before signing proofs of claim for their clients. There is no question that any attorney is allowed to do so, but the attorney puts himself at risk by becoming a fact witness. The Court would suggest that attorneys encourage clients to sign proofs of claim to avoid what has occurred in this suit. Here, the time-consuming and costly effects of the Motion are particularly instructive. Indeed, this whole ordeal could have been avoided if Stohner simply had a representative from Amegy knowledgeable about the loan, such as Helffrich, sign the proof of claim.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 17th day of June, 2011.

_____

Jeff Bohm
United States Bankruptcy Judge

18